**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>v.<br><br>**CRAIG C. GARRICK, JR.,**<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER ON MOTION FOR MODIFICATION OF IMPOSED TERM OF IMPRISONMENT**<br><br>Case No. 2:20-CR-00312-DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Defendant's Motion to Modify Sentence, pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A). Due to Defendant's alleged extraordinary and compelling family circumstances, Defendant requests that the court reduce the imprisonment portion of his sentence and instead impose an additional condition of supervised release that he serve a term of home confinement for a period not to exceed the unserved portion of the original term of imprisonment. The United States has filed an opposition to Defendant's motion, and Defendant has filed a reply. The court considers the motion fully briefed. Therefore, the court enters the following Memorandum Decision and Order based on the parties' submissions and the law and facts relevant to Defendant's motion.

On February 10, 2021, pursuant to his own plea agreement, Defendant was sentenced to serve twelve months and one day in prison for securities fraud. For a variety of reasons, Defendant's surrender date was delayed until September 13, 2021. According to the Bureau of Prisons' ("BOP") calculation, Defendant's expected date for release from incarceration is July 20, 2022, but pursuant to 19 U.S.C. § 3624(c)(2) it is expected that Defendant will be placed in

1

home confinement in mid-June 2022. On October 26, 2021, Defendant sent a request to his warden that his sentence be modified to home confinement and that he be granted compassionate release. Defendant received no response. Defendant now requests that the court grant his request for a sentence modification based on the circumstances that Defendant's family is experiencing, which include caring for a child with autism and Down syndrome along with five other minor children.

"Federal Courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed, but th[at] rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One exception is contained in 18 U.S.C. § 3582(c)(1)(A), which allows a federal prisoner to file a motion for compassionate release directly with the court after the defendant has exhausted administrative remedies with the BOP. *United States v. Willis*, 382 F. Supp. 3d 1185, 1187 (D.N.M. 2019). In this case, the United States does not dispute that Defendant has exhausted his administrative remedies under 18 U.S.C. § 3582(c). Therefore, the court has jurisdiction to decide Defendant's motion.

Under § 3582(c)(1)(A), a court may reduce the term of imprisonment, after considering the factors set forth in § 3553(a) to the extent that they are applicable, if it finds that "extraordinary and compelling reasons warrant such a reduction; and . . . such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). Based on the plain language of this statute, the Tenth Circuit adopted a three-step test for granting a motion for reduction of sentence: "(1) the district court finds that extraordinary and compelling reasons warrant such a reduction; (2) the district court finds that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and (3) the district court considers the factors set forth in § 3553(a), to the extent

2

that they are applicable." *United States v. Maumau*, No. 20-4056, 2021 WL 1217855, *7 (10th Cir. Apr. 1, 2021).

The only Sentencing Commission policy statement regarding "extraordinary and compelling" standards that is applicable to Defendant's circumstances is U.S.S.G. § 1B1.13. In this policy statement, the family circumstances that qualify as grounds for compassionate release are: (1) the "death or incapacitation of the caregiver of the defendant's minor child or minor children" and (2) the "incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13, cmt. n.1(C). The policy statement does acknowledge that there may be other extraordinary and compelling reasons that were not specifically listed. U.S.S.G. § 1B1.13, cmt. n.1(D). Because this court's decision must be consistent with this policy statement, the court now evaluates Defendant's family circumstances with this policy in mind.

First, Defendant's wife Rosie Garrick is not dead or incapacitated. Mrs. Garrick has explained to the court that she is at her emotional and physical breaking point – that the toll of taking care of her minor children, particularly her child CJ who has autism and Down syndrome, has mentally exhausted her and physical challenged her. This is especially the case since CJ is very strong, often needs physical assistance, and sometimes needs to be physically restrained. She and Defendant do not believe this is a tenable situation. However, mental and physical exhaustion here do not make Mrs. Garrick incapacitated. The statements provided to the court show that Mrs. Garrick has so far managed to get by and provide the necessities for her minor children – something an incapacitated caregiver could not do.

Second, the court does acknowledge that Mrs. Garrick appears to be the only available caregiver for her and Defendant's minor children. The assistance, or potential assistance, of her

family, friends, church community, and other resources all seem to be sources of supplemental care, but Mrs. Garrick remains the only available primary caregiver for her children at this time due to complications with government services and in the lives of those in her support system. Nevertheless, Mrs. Garrick has relied on outside assistance to remain capable to fulfill her role as caregiver for her and Defendant's minor children. This lack of incapacitation, as well as the outside help available here, does not weigh in Defendant's favor. Next, the court considers Defendant's situation more broadly.

The Tenth Circuit has held that "[d]isruptions of the defendant's life, and the concomitant difficulties for those who depend on the defendant, are inherent in the punishment of incarceration." *United States v. McClatchey*, 316 F.3d 1122, 1132 (10th Cir. 2003) (quoting *United States v. Sweetings*, 213 F.3d 95, 102 (3rd Cir. 2000)). In the context of downward departures, the U.S. Sentencing Guidelines definitively state, "family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted." U.S.S.G. § 5H1.6. Courts have read this to mean that where the defendant is not absolutely irreplaceable, departures based on family obligations should be rejected. *See Elliott v. United States*, 332 F.3d 753, 769 (4th Cir. 2003).

Mrs. Garrick asserts that Defendant is the ideal person to support her in taking care of the many needs of their minor children, and the court does not dispute this. However, Defendant agreed to a plea deal that he thought (and still thinks) was reasonable – at which time Defendant knew and accepted as part of his punishment that his family would suffer because of his conduct and that he would not be available to help Mrs. Garrick with the children. While Defendant and his wife may have misjudged the magnitude of the problems that Defendant's absence would cause, the court finds that these problems have not altered the situation enough to make

4

Defendant "irreplaceable." Yes, there is clearly no person who would fulfill the same role as Defendant for Mrs. Garrick and their children. However, Mrs. Garrick does have sources of outside help (including significant financial support) that she can rely upon to varying extents, and Mrs. Garrick has proven through her actions that she is not incapacitated as a caregiver. While these circumstances have put great strain on Mrs. Garrick, she has proven she is able to take sufficient care of the children for the time being. Based on this, the court thinks it likely that she will remain able to do so throughout the next few months until her husband is released from prison.

Finally, the court finds that there is an important § 3553(a) factor here that weighs against Defendant's release – deterrence. When Defendant committed the instant offense of securities fraud, he was already on probation. That probation did not stop his criminal behavior. To give Defendant compassionate release now, within mere months of his incarceration, raises a concern that Defendant may not be adequately deterred from committing more crime.

Based on the above reasoning, and taking into account the applicable policy statements and sentencing factors, the court concludes that the circumstances here are not extraordinary and compelling enough to justify modifying Defendant's sentence. Therefore, Defendant's Motion to Modify Sentence is DENIED.

DATED this 22nd day of February, 2022.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge